### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### TRENTON DIVISION

| | | |
|---|---|---|
| **BRISTOL-MYERS SQUIBB COMPANY,** | ) | Case No. 3:10-cv-05810-MLC-LHG |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **versus** | ) | |
| | ) | |
| **APOTEX, INC. and APOTEX, CORP.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **BRISTOL-MYERS SQUIBB COMPANY,** | ) | Case No. 3:11-cv-06918-MLC-LHG |
| | ) | |
| **Plaintiff,** | ) | Courtroom No. 5W |
| | ) | Clarkson S. Fisher Building |
| **versus** | ) | & U.S. Courthouse |
| | ) | 402 East State Street |
| **APOTEX, INC. and APOTEX, CORP.,** | ) | Trenton, New Jersey 08608 |
| | ) | |
| **Defendants.** | ) | April 9, 2012 |
| | ) | 2:08 P.M. |

```
    TRANSCRIPT ORAL ARGUMENT ON MOTION TO STRIKE OR, IN THE
  ALTERNATIVE, TO STAY AND BIFURCATE CLAIMS PERTAINING TO
     WILLFULNESS AND EXCEPTIONAL CASE (DOCKET 25)
              (HEARING HELD TELEPHONICALLY)
         BEFORE HONORABLE MARY L. COOPER
          UNITED STATES DISTRICT JUDGE
```

TELEPHONIC APPEARANCES:

For the Plaintiff:        Connell Foley, LLP
                          By:  CHRISTINE I. GANNON, ESQ.
                          86 Livingston Avenue
                          Roseland, New Jersey 07068

                          Kaye Scholer LLP
                          By:  BENJAMIN HSING, ESQ.
                               LEORA BEN-AMI, ESQ.
                               JEANNA M. WACKER, ESQ.
                          425 Park Avenue
                          New York, New York 10022-3598

Electronic Sound Recorder: Antonio Giaquinto

**TRANSCRIPTION SERVICE:**    **TRANSCRIPTS PLUS, INC.**
                          **435 Riverview Circle**
                          **New Hope, Pennsylvania 18938**
                          **Telephone: 215-862-1115**
                          **Facsimile: 215-862-6639**
                          **e-mail CourtTranscripts@aol.com**

```
Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.
```

TELEPHONIC APPEARANCES:

For Defendants:            Saiber LLC
                           By:  GERI L. ALBIN, ESQ.
                                ARNOLD B. CALMANN, ESQ.
                           One Gateway Center
                           10TH FLOOR
                           Newark, New Jersey 07102-5311

                           Rakoczy Molino Mazzochi Siwik LLP
                           By:  LUKE SHANNON, ESQ.
                                NEIL A. BENCHELL, ESQ.
                           6 West Hubbard Street
                           Suite 500
                           Chicago, Illinois, 60654

1          <u>TRENTON, NEW JERSEY  MONDAY,  APRIL 9, 2012   2:08 P.M.</u>

2                    (Call to order of the Court)

3               THE COURT:  Good afternoon, everyone.

4               MULTIPLE SPEAKERS:  Good afternoon.

5               THE COURT:  This is the consolidated case of Bristol

6  Myers Squibb versus Apotex with Docket Numbers 10-5810 and 11-

7  6918.  Can I have the appearances of counsel in the order of

8  the caption, which would have the plaintiff's counsel first,

9  without your law firm name, and then defendants' counsel next.

10              MS. GANNON:  Good afternoon, Your Honor.  This is

11  Christine Gannon along with Benjamin Hsing, Leora Ben-Ami, and

12  Jeanna Wacker.

13              THE COURT:  Thank you.

14              MR. CALMANN:  Hello, Your Honor.  This is Arnie

15  Calmann.  With me is my colleague Geri Albin and my co-counsel

16  in Chicago, who will identify themselves.

17              MR. SHANNON:  Good afternoon, Your Honor.  This is

18  Luke Shannon.

19              MR. BENCHELL:  And good afternoon, Your Honor.  This

20  is Neil Benchell.

21              THE COURT:  All right.  Fine.  This is the, I'm sorry

22  to say, somewhat long delayed oral argument on defendants'

23  Motion Number 25 on the docket, which is a motion to strike or,

24  in the alternative, to stay and bifurcate claims pertaining to

25  willfulness and exceptional case.

4

1      I have reviewed the moving papers and related

2 materials, and I can hear your argument.  I think it should go

3 fairly orderly and quickly.  I have a notion what I'm going to

4 do, but I'll certainly listen to your argument.

5      Mr. Calmann, who will argue this motion on behalf of

6 defendant?

7      MR. CALMANN:  I think Mr. Shannon or Mr. Benchell.

8      THE COURT:  Whenever anybody is speaking, you must

9 state your last name each time.  So, you can say "This is Mr.

10 Shannon," and then you can speak.

11      MR. SHANNON:  Thank you, Your Honor.  Your Honor,

12 this is Luke Shannon on behalf of the Apotex defendants.

13      Your Honor, there is simply no reason for the Court

14 and for the parties to spend time and resources on plaintiff's

15 willfulness and exceptional case claim, and certainly not at

16 this time.

17      In the first instance, there is no question that

18 plaintiff's willfulness allegations are legally baseless in

19 view of governing Federal Circuit case law.  Therefore, we

20 believe that those willfulness allegations should be stricken,

21 and that willfulness cannot be a basis for plaintiff's

22 exceptional case claim.

23      In the alternative, we believe there's simply no

24 reason to proceed on those claims now until the Court has had

25 an opportunity to determine issues relating to validity and

1   infringement of the patent suit.  At that point, those claims,

2   should they exist at that point, can be addressed.

3         Just by way of background, Your Honor, this case, as

4   you may know, is a Hatch-Waxman case.  Apotex, Inc. has filed

5   two ANDAs and BMS has filed two complaints on those ANDAs, both

6   of which relate to various strengths of the Dasatinib tablets.

7         In both of BMS's complaints, it includes allegations

8   of willfulness and exceptional case, which -- with no further

9   allegations with that in mind.

10        And Your Honor is aware from, as we have set forth in

11  our papers, Federal Circuit case law is clear that the filing

12  of an ANDA cannot be the basis for a willfulness claim.

13        Moreover, the Federal Circuit has set forth several

14  primary bases for exceptional case, namely misconduct before

15  the Patent and Trademark Office, litigation misconduct, and

16  willful infringement.

17        Now the first two of those primary bases are wholly

18  inapplicable here.  First of all, Apotex does not have any

19  patents involved in this case.  And so there clearly can be no

20  misconduct before the PTO.

21        Second, this case is just beginning, and so there

22  cannot be any allegations of litigation misconduct.  And we

23  don't understand BMS to be asserting that that is the case.

24        Therefore, the only basis that is even conceivable is

25  willful infringement.  And, again, as the Federal Circuit has

1  made clear, the filing of an ANDA cannot be the basis for a

2  willfulness claim.

3          Now plaintiffs have brought up for the first time in

4  their responsive brief that willfulness and exceptional case

5  can be based on a -- what they have called a baseless Paragraph

6  4 certification.  Apotex believes that the Apotex, Inc.'s

7  Paragraph 4 certification is anything but baseless.  The two

8  paragraph 4 notice letters that Apotex, Inc. has sent to BMS

9  were each well over 100 pages.  Apotex, Inc. -- Apotex has

10  provided infringement and invalidity contentions to BMS, both

11  of which were several hundred pages each, and each of which

12  included appendices which were each themselves several hundred

13  pages.

14          Moreover, BMS has suggested in its responsive brief

15  that Apotex, Inc.'s Paragraph 4 certification was baseless

16  because Apotex was -- Apotex, Inc.'s notice letters -- it says,

17  "did not cite sufficient prior art references against one of

18  the patents in suit."

19          Well, in the first instance, that's -- that's not

20  accurate because Apotex has cited numerous prior art

21  references.

22          But moreover, BMS's arguments disregard the fact that

23  there were multiple other bases for Apotex's position that the

24  patents in suit are invalid and BMS disregards the fact that

25  the Paragraph 4 letter also includes bases for non-infringement

1    positions.  So far from being baseless, Apotex, Inc.'s notice

2    letters provide ample basis for its certifications.

3          With this in mind, Apotex believes that the Court

4    should strike BMS's willfulness and exceptional case claims.

5    But even -- but in any event, we believe that there is no

6    reason to pursue -- no reason to proceed on those claims at

7    this point.

8          Further, judicial economy would be served by

9    bifurcating issues relating to willfulness and exceptional

10   case, for the simple reason that if the -- if the determination

11   of liability in this case, either non-infringement or

12   invalidity, is proven as to any or all of the patents in suit,

13   issues relating to willfulness would be rendered moot.  And so

14   the Court and the parties need not expend resources on those

15   issues now.

16         Moreover, despite what we understand to be BMS's

17   position in its response, there are no overlapping issues.

18   Infringement relates to the actions of the party, whereas

19   willfulness involves the nature of those actions, but other

20   words issues relating to an alleged infringer's state of mind

21   and its knowledge.  It's not as simple as just simply

22   concluding that they both involve invalidity and infringement,

23   that's simply not the case.

24         Moreover, Apotex faces real prejudice if we are

25   forced to litigate issues relating to willfulness at this

8

1   point.  As we have set forth in our brief, if Apotex is to

2   present an advice of counsel defense, Apotex will be forced to

3   determine at this early stage in the litigation whether it will

4   rely on its advice of counsel and whether it will be forced to

5   disclose its otherwise privileged materials early on in the

6   case.  Notwithstanding Knorr-Bremse and that case law, Apotex

7   faces real prejudice by having to decide right now whether it

8   would rely on that defense and, therefore, be forced to present

9   to BMS what would be a road map of its defenses early on in

10  their case.

11            THE COURT:  I understand your arguments.  And that

12  case is K-N-O-R-R.

13            MR. SHANNON:  That's right.

14            THE COURT:  Okay.

15            MR. SHANNON:  Knorr-Bremse.

16            THE COURT:  Anything else?

17            MR. HSING:  Your Honor --

18            THE COURT:  Wait.  Mr. Shannon, anything else?

19            MR. SHANNON:  No, Your Honor.  Thank you.

20            THE COURT:  Thank you.  You can have a moment to

21  reply.

22            MR. HSING:  Your Honor, this is Benjamin Hsing on

23  behalf of Bristol-Myers.

24            THE COURT:  Yes.

25            MR. HSING:  Your Honor, first of all, I believe the

1    Federal Circuit case law does not foreclose charge of willful

2    infringement in a ANDA case.  The case that Apotex relied is

3    the <u>Glaxo</u> case where in that case there is a statement saying

4    that the mere filing of an ANDA doesn't -- cannot constitute

5    willful infringement.  And that's correct, and that's obviously

6    correct.

7         But in this case -- in that case, Your Honor, the

8    ANDA was filed under the old FDA regulations relating to

9    antibiotic products.  In that kind of situation at that time,

10   there was no need to file a certification -- a Paragraph 4

11   certification certifying that in the ANDA filing, the patent

12   was invalid or not infringed, so -- so that makes a big

13   difference.

14        Where in this case, there was a specific Paragraph 4

15   certification that was filed by Apotex stating that the patents

16   that were listed in the Orange Book were either non-infringed

17   or invalid.  And -- and cases since the <u>Glaxo</u> case, including

18   certain District Court cases, have held that the <u>Glaxo</u> case

19   does not apply to cases where there was a Paragraph 4

20   certification.

21        And we understand that there are a split among the

22   District Courts as to whether a willful infringement claim can

23   be made in a ANDA type litigation.  However, separate and apart

24   from the willful infringement case, there's no case that we're

25   aware of that -- where a court has stricken a charge of

1    exceptional case in a ANDA case.  Not a single case was cited

2    by Apotex to support that motion.

3           And -- and it's -- in terms of the exceptional case

4    allegation, case law is very clear that an exceptional case can

5    be made out by various means, including willful infringement, a

6    baseless certification -- Paragraph 4 certification, or other

7    litigation misconduct.

8           And here, you know, we intend to show that Apotex's

9    Paragraph 4 certification was baseless, particularly in regard

10   to our compound patent, which is --

11          THE COURT:  Your what patent?

12          MR. HSING:  The compound --

13          THE COURT:  The compound?

14          MR. HSING:  Yes.

15          THE COURT:  Okay.  Thank you.  Keep going.

16          MR. HSING:  In that case --

17          THE COURT:  That's all right, I don't need to know

18   the details.  No.

19          MR. HSING:  And then the allegation regarding that is

20   it's baseless because the allegation behind it doesn't even

21   follow the Federal Circuit precedent.  So, we have a basis to

22   state that the Paragraph 4 certification's baseless.

23          Apotex argues that we didn't plead in our complaint

24   that their certification was baseless.  Although there's no

25   requirement to plead it, we did plea in the complaint that they

1  filed the Paragraph 4 certification, and then we plea that

2  there was an exceptional case.  And our position is that would

3  be sufficient.

4          In fact, the numerous District Court cases which

5  address this issue, in those cases, there was no explicit

6  pleading of -- of a baseless certification.  For example, the

7  Wyeth case, I believe, and the Jenssen case, in those cases,

8  there was no explicit pleading of a baseless certification.

9          So, clearly, the charge of a baseless certification

10  can be a ground for exceptional case under which Bristol-Myers

11  would be entitled to attorney's fees.

12          Regarding Apotex's alternative argument that the

13  exceptional case or willful infringement should be bifurcated,

14  we don't think that should be the case because that would just

15  duplicate the efforts of the parties in terms of conducting

16  discovery.  One may require multiple trials on the same issues

17  -- overlapping issues.

18          In this case, certainly the charge of a baseless

19  certification, the issues regarding that overlap with the

20  validity of the patent because the principal argument in their

21  certification is that the patents would have been invalid, and

22  that certainly will overlap with the liability issues to be

23  tried in the case.

24          And also many of the witnesses on these issues will

25  be the same.  For example, you will have the same experts

1   opining upon whether the certification was sufficient and

2   whether the patents in suit were valid or invalid.

3         And as to whether there would be any prejudice,

4   Apotex cites the Quantum case saying that it will be facing a

5   dilemma if they choose to waive attorney/client privilege.  The

6   so-called Quantum dilemma derived from earlier Federal Circuit

7   cases, namely the Underwater case where at that time if you

8   failed to produce an opinion of counsel, there will be an

9   adverse inference against you if you -- in terms of a willful

10   infringement charge.

11         And here, since the Quantum case four or five years

12   ago, the Knorr-Bremse case came out saying that the Underwater

13   has been overruled, if you fail to produce an opinion of

14   counsel, that there will not be an adverse inference drawn

15   against the accused infringer.

16         So, there's really no more Quantum dilemma faced by

17   someone who's being accused of willful infringement.  In fact,

18   numerous District Court cases since the Knorr-Bremse case have

19   ruled that Quantum -- the so-called Quantum dilemma doesn't

20   exist anymore.  So, there is really no prejudice to Apotex

21   other than the usual prejudice, namely they have to -- what

22   they have to do in terms of litigation.  They have to make

23   their strategic decisions, but that's normal in any types of

24   litigation.

25         And also certainly, you know, having us stay

1   discovery and conduct discovery on willful infringement charge

2   or baseless certification charge would require more effort, it

3   would certainly double the judicial effort involved in having

4   to perhaps render multiple rulings.

5           THE COURT:  Right, I understand.  I understand.

6   Anything else?

7           MR. HSING:  That's it, Your Honor.

8           THE COURT:  Okay.  Thank you, Mr. Hsing.

9           Back to Mr. Shannon.  Please don't repeat.

10          MR. SHANNON:  Thank you, Your Honor.  I'd just like

11  to address a couple of important -- a couple of points that Mr.

12  Hsing made.

13          First of all, with respect to the Glaxo case, I'd

14  just like to point out that while Mr. Hsing is correct that

15  that case did involve a narrow issue -- a narrow -- that that

16  case did involve a situation where an accused ANDA filer did

17  not include a Paragraph 4 certification.  The court actually

18  noted that as being sort of unique to that particular -- those

19  particular circumstances but did not base its reasoning on the

20  fact that no certification was submitted in that case.

21          In fact, if I may quote that case, the -- Glaxo said,

22  "The mere fact that a company has filed an ANDA application or

23  certification cannot support a finding of willful infringement

24  for purposes of awarding attorney's fees."  That's at Page 1350

25  and 1351.

1       I would also like to point out that if Mr. Hsing is

2   correct that the Glaxo line of cases can be disregarded by the

3   fact that -- in a situation where a Paragraph 4 certification

4   is submitted, then it would be potentially every Hatch-Waxman

5   case in which a complaint could allege willful infringement.

6   And, therefore, there would be no -- it would not be what Mr.

7   Hsing called the split.  This case -- this would not be an

8   issue because willful infringement would be properly pled in

9   every case.

10       I would also like to point out another -- I would

11  like to address another point that Mr. Hsing made with respect

12  to his assertion that our -- that Apotex, Inc.'s Paragraph 4

13  letter does not -- issues that he has with respect to our

14  arguments as to what he calls the compound patent.  Your Honor,

15  we included numerous arguments.  As I said before, our notice

16  letters were hundreds of pages long, and included lengthy

17  arguments as to invalidity under Section 101 and Section 102 --

18  or pardon me, 112.

19       Those positions were and are proper under the

20  governing case law as we intend to demonstrate in the

21  litigation of this case.

22       THE COURT:  101 is what?

23       MR. SHANNON:  Utility, Your Honor.

24       THE COURT:  And 112 is obviousness?

25       MR. SHANNON:  No, I'm sorry.  Written description and

 1  enablement.

 2          THE COURT:  101 is what?

 3          MR. SHANNON:  Pardon me?  101 is utility, and 112 is

 4  written description and enablement, enablement in particular.

 5          THE COURT:  No issue of obviousness in this case?

 6          MR. SHANNON:  There are issues of obviousness, as

 7  well, Your Honor.  We -- and particularly in our contentions,

 8  we cite numerous prior art references in the obviousness and

 9  anticipation context for all of the patents in suit.

10          THE COURT:  Okay.  So, that's 102, if memory serves

11  me.

12          MR. SHANNON:  103 is obviousness, Your Honor.

13          THE COURT:  Right.

14          MR. SHANNON:  102 is anticipation.

15          THE COURT:  I'm just trying to get the translation

16  here.

17          Go ahead.

18          MR. SHANNON:  Oh, I'm sorry.  102 is anticipation and

19  103 is obviousness.

20          THE COURT:  And you allege those, as well as 101 and

21  112.

22          MR. SHANNON:  Yes.

23          THE COURT:  As to some of these patents.  Go ahead.

24  I really do not want to get into the details of this, I'm just

25  trying to follow your basic point.

1          MR. SHANNON:  I'd be glad, Your Honor.

2          THE COURT:  Okay.  And then you wanted to say that

3 you still have the Quantum dilemma because even though there's

4 no adverse inference from failure to produce an opinion, you

5 still have to decide whether you want to produce opinion of

6 counsel in order to establish good faith, if it should come to

7 that.

8          MR. SHANNON:  Exactly.

9          THE COURT:  Yes.

10          MR. SHANNON:  Exactly, Your Honor.

11          THE COURT:  That was in your brief.

12          MR. SHANNON:  Exactly, yes.

13          THE COURT:  Okay.  May I rule now?  Anything else

14 from anyone?

15                    (No audible response heard)

16          THE COURT:  Are you there?

17                    (No audible response heard)

18          THE COURT:  I read the Federal Circuit case law

19 specifically having to do with ANDA filings.  At this point we

20 have sort of a trilogy:

21          You've got Yamanouchi, Y-A-M-A-N-O-U-C-H-I, at 231 F.

22 3d 1339, that was a 2000 decision;

23          And then you've got Glaxo v. Apotex, 376 F. 3d 1339,

24 a 2004 decision;

25          And the third is Takeda, T-A-K-E-D-A, at 549 F. 3d

1   1381, a 2008 decision.

2            Essentially I am very clear that these decisions say

3   that a finding of exceptional case to support an award of

4   counsel fees under 35 U.S.C. Section 285 can be based upon

5   allegations of a baseless ANDA filing or certification, as well

6   as litigation misconduct.  The latter can consist of continuing

7   to assert baseless contentions or searching for even better,

8   but still non-meritorious contentions in the course of an ANDA

9   litigation.

10           The Federal Circuit has declined to use the rubric of

11  "willful and deliberate" in this particular inquiry as to

12  whether an ANDA filing and litigation can support an award of

13  counsel fees under Section 285.

14           The problem with using -- attempting to use a willful

15  designation when we're talking about the ANDA context is that

16  it can improperly connote that under the Hatch-Waxman portion

17  of the patent law, a successful litigant could get treble

18  damages under Section 284; 35 U.S.C. Section 284.

19           There's no statutory authority under the Hatch-Waxman

20  area of the patent statute for a court to award treble damages

21  unless the conduct of the alleged infringer goes into the

22  marketplace, which there's no indication in the pleadings here

23  that this defendant is moving into the marketplace without

24  court authority or without notifying the adversary.

25           So, I am going to grant the motion to, shall we say,

1  strike or -- it's called a motion to strike, but it's actually

2  brought under Rule 12(c), and the standard for that is the same

3  as the standard under 12(b)(6), which is failure to state a

4  claim.

5          I'm only going to grant the motion to strike the

6  allegation of willful and deliberate in the various paragraphs

7  where it is found.  And also to strike the corresponding

8  request for relief, starting with, "If Apotex engages in the

9  importation, commercial manufacture," et cetera, seeking treble

10 damages.  It's Subparagraph D of the complaint, prayer for

11 relief, in each of the two complaints here.

12         And the paragraphs that I'm striking in each of the

13 two complaints are under Docket Number 10-5810, I'm striking --

14 which means dismissing without prejudice -- Paragraphs 35, 42,

15 49, and 56.

16         And in Complaint Docket Number 11-6918, I'm striking

17 the corresponding allegations of willful and deliberate,

18 Paragraph 39, and 46, and 53, and 60.

19         I've already said I'm striking prayer for relief D in

20 each of these two complaints.

21         Now this is without prejudice because if there should

22 be marketplace activity, then a motion to amend the pleadings

23 to allege a prayer for relief under Section 284, of course,

24 could be sought.  But that would have to be by leave of Court

25 based upon additional allegations.

1         I do agree with plaintiff in this regard, which is

2    that these two complaints adequately seek exceptional case

3    attorney's fees under 35 U.S.C. Section 285 without having to

4    allege further facts, other than that the ANDA certification

5    has been filed.  That is adequate pleading to seek the

6    exceptional case attorney fee relief under 35 U.S.C. Section

7    285.

8         So, to that extent, the motion to -- it's a motion to

9    strike, but I'm actually going to dismiss without prejudice

10   those portions of these complaints by striking those particular

11   paragraphs.  And since the motion was brought under Rule 12(c),

12   it's being decided under the 12(c) standard which, of course,

13   refers to Twombly and Iqbal in current Supreme Court

14   jurisprudence, and the Phillips case in the Third Circuit.

15        As to bifurcating, the way that this is properly done

16   in my view would be that we will try the ANDA case on the

17   substantive allegations, whatever they are, be it infringement

18   and various claims of invalidity under the Hatch-Waxman

19   framework, which is nonjury.  I'll talk to you about case

20   management when I'm finished with this ruling, but I envision

21   resolving the substantive issues in the case under the ANDA

22   pleadings.

23        And in the event that the plaintiff prevails, then

24   the plaintiff may make a motion under Rule 54(d)(2) once we've

25   resolved any of these issues in plaintiff's favor.

1        And then we will probably separately try entitlement.

2   And if entitlement is established, then the amount of any award

3   to the plaintiff.

4        Rule 54(d)(2) provides that "Unless a statute or

5   court order provides otherwise, this motion for attorney's fees

6   must be filed no later than 14 days after the entry of

7   judgment."  We would modify that to set forth an appropriate

8   schedule.

9        And it also says under Rule 54(d)(2)(C) that the

10  court can decide issues of liability for fees before receiving

11  submissions on the value of fees, that value of services.  So,

12  that's where I get the notion of deciding liability for fees

13  before deciding value of services and amount of fees.

14        But all of that is post judgment actually.  So, I

15  don't think I have to issue an order of bifurcation.  That's

16  just the way that it happens.

17        Now as to whether we should stay discovery on issues

18  that may be related -- that would be related to an award of

19  counsel fees in an exceptional case framework under 38 U.S.C.

20  Section 285, I've thought about that quite a bit, and I've

21  carefully reviewed this case law.  And I do understand the

22  defendants' concern that it has to make an election about

23  whether to assert opinions of counsel in order to support its

24  good faith, even if it can't be the object of an adverse

25  inference for failure to bring forth such opinions.

1           The <u>Knorr</u> case, 383 F. 3d 1337, 2004 only eliminated

2     that adverse inference.  It doesn't address the so-called

3     <u>Quantum</u> dilemma that I recognize the defendant still faces.

4           But in my view, that does not justify in the ANDA

5     context putting off the day of making that tactical decision

6     forever or until the whole ANDA case has been decided on the

7     pleadings.

8           I get some guidance from this -- actually from this

9     extremely fascinating <u>Takeda</u> case that I just cited to you,

10    which is the most recent Fed Circuit decision on these issues

11    of extraordinary case to support attorney fee awards in the

12    ANDA context.  In that case, the District Judge entered final

13    judgment in favor of the plaintiff on the ANDA dispute on March

14    13, 2006.  The plaintiff then moved for an award of attorney's

15    fees on the theory that this was an exceptional case.  And the

16    District Judge set a schedule, and eventually rendered a

17    decision six months later that plaintiff was entitled to fees,

18    and then rendered a decision some six months after that -- yes,

19    exactly six months after that, awarding -- quantifying the fees

20    at $16,800,000.

21          I found that to be the type of procedure that I would

22    envision under Rule 54.  And so I went and I looked at the

23    decision of the District Court, which is called its September

24    decision, where it ruled that, yes, there was entitlement to

25    attorney's fees, that this was an exceptional case.  And that

1  decision is found at 459 F. Supp. 2d 227.  In that decision,

2  which was complimented highly by the Federal Circuit, as were

3  all of the series of decisions by that District Judge, the

4  District Judge went back and reviewed the procedural history of

5  when and how the defendant had its opportunities given to it to

6  come up with opinions of counsel if it wanted to rely on them.

7  And you can see how it laid out, but basically there were a

8  series of scheduling orders during the management of the case,

9  and the defendant was given a date certain to do one thing,

10 which was to disclose intent to rely on advice of counsel on

11 any specific -- "to identify the issues on which they intended

12 to assert an advice of counsel."  And then following such a

13 disclosure, the plaintiff could demand production of documents,

14 and take appropriate discovery.  All of this could be

15 supervised in the discovery process.

16        The result of that scheduling process was that by the

17 time the District Judge was able to decide the ANDA case, the

18 District Judge was ready to set a schedule to conduct its

19 hearing and adjudicate the entitlement, if any, to counsel

20 fees.

21        We're not talking about amount of counsel fees right

22 now, but entitlement, if any, to counsel fees.

23        I think that would be an appropriate approach to this

24 issue in our case.  And I will leave to the Magistrate Judge

25 the decision how to schedule when the defendant has to make its

1   tactical decision on what, if any, issues it wishes to rely on

2   advice of counsel opinion for.  And then if it does so

3   designate issues, then to supervise orderly discovery of just

4   those advices of counsel.

5           This is all subject to -- you know, Magistrate

6   decisions can be appealed to the District Judge, but I think

7   that's an orderly way to proceed.

8           This is a not very long way of saying that there's no

9   need for this Court to bifurcate, if you will, adjudication on

10  counsel fees because the rules address that sequence of

11  proceedings.  And there's no need for this Court to bifurcate a

12  willful misconduct proceeding because I'm striking willful

13  misconduct from the pleading.

14          And this Court will defer to the Magistrate Judge in

15  the first instance to manage the scheduling of all discovery,

16  including discovery that would address the issue of advice of

17  counsel if to be asserted by defendant.

18          I don't know exactly what the status of discovery is

19  in this case, and we'll talk about that in a minute.  But all I

20  would seek is that discovery on all issues, including advice of

21  counsel, be completed by the time the case is ready for

22  adjudication of the ANDA case by this District Judge.

23          Does that answer your questions?

24              (No audible response heard)

25          THE COURT:  Are you there?

1          MR. HSING:  Yes, Your Honor.  Yes.  Yes, Your Honor.

2   Benjamin Hsing, yes, Your Honor.

3          THE COURT:  Okay.

4          MR. SHANNON:  Yes, it does.

5          THE COURT:  Okay.  We'll mark up the order, and we'll

6   put it on the docket.  If you don't like the form of order,

7   just get back to us and we'll fix it.  Okay?

8          MR. HSING:  Yes, Your Honor.

9          MR. SHANNON:  Yes, Your Honor.

10         THE COURT:  Let's talk about getting the case in for

11  Markman hearing and other proceedings.  Is it correct that as

12  of mid-May, you expect to have your Markman submissions

13  complete?

14         MS. GANNON:  Yes.

15         THE COURT:  Who's speaking?

16         MS. GANNON:  Christine Gannon.  May 25th is the date

17  for responsive Markman.

18         THE COURT:  Okay.  So, by the end of May, we'll at

19  least have a full Markman briefing, right?

20         MS. GANNON:  Right, that's correct.

21         THE COURT:  Would you like to set a date for a

22  Markman hearing?

23         MR. HSING:  Yes, Your Honor; Benjamin Hsing.

24         THE COURT:  All right.  You can speak to the

25  courtroom deputy off-the-record for a moment, and we'll target

1  a date.  If that date turns out -- that we pick today turns out
2  to not work for you as we go along, then there will be
3  flexibility in it, either for you or your witnesses.  But we
4  may not need witnesses for the Markman hearing, we shall see.
5  Generally I don't have witnesses for Markman hearings.  But if
6  you find out even that counsel have scheduling problems, this
7  will be flexible, but it will be something for us to aim for.
8          I think that the entire 30-month period expires on or
9  about May 13, 2013.
10          MR. HSING:  Your Honor, Benjamin Hsing.
11          It's actually -- the two ANDAs -- the first one
12  actually expires on December 28th, 2013.
13          In this case, it's actually greater than a 30-month
14  because the drug at issue is entitled to a new chemical entity
15  exclusivity.  So the statutory stay expires on December 28th,
16  2013 for the first ANDA.  And then Apotex filed a second ANDA,
17  as to another dosage, that one expires in April, 2014.  But, of
18  course, the two cases have been consolidated --
19          THE COURT:  Yes.
20          MR. HSING:  -- so I believe the first -- same governs
21  for the purposes of this case.
22          THE COURT:  Well, what I may need to do is not follow
23  the sometimes all too typical pattern of racing right up to the
24  last minute.
25          MR. HSING:  Yes.

1          THE COURT:  In theory, we're supposed to be able to

2    get the case done at the District Court and through the Federal

3    Circuit adjudication in 30 months.  And to the extent possible,

4    I'm going to work with you so that we can move this case along.

5          MR. HSING:  Yes, Your Honor.

6          THE COURT:  Let's go off the record so you can talk

7    to the courtroom deputy, and then I'll come back on the record

8    and we'll say what date you've picked.

9          (Off the record 2:51:15/Reconvene 2:52:51 P.M.)

10          THE COURT:  Early June.  So, we'll all have this

11   Markman package in front of us by then, and we can see what

12   sort of a hearing we need, if any.

13          MR. BENCHELL:  Your Honor, this is Neil Benchell.

14   That will be fine.  Thank you.

15          THE COURT:  Okay.  So, the courtroom deputy's going

16   to suggest a -- and that will just be a scheduling call, you

17   know, just a five-minute call.

18          MS. HEFFNER:  Tuesday, June 5th at 4 o'clock.

19          UNIDENTIFIED ATTORNEY:  Did you say 4 o'clock?  I'm

20   sorry.

21          MS. HEFFNER:  4 o'clock.

22          THE COURT:  4 o'clock our time would be, what, 1 -- I

23   don't know where you are.

24          MR. BENCHELL:  As far as the Apotex attorneys, we're

25   in Chicago, so we're just an hour behind.  So, it will be 3

 1  o'clock, and that -- and June 5th fine.

 2              MS. HEFFNER:  June 5th at 4 P.M.

 3              UNIDENTIFIED ATTORNEY:  June 5th?

 4              MS. HEFFNER:  Yes.

 5              MS. GANNON:  Yes.

 6              THE COURT:  Is that a Tuesday?

 7              MS. HEFFNER:  Yes.

 8              THE COURT:  Tuesday, June 5 at 4 P.M.  6/5 at 4.

 9                        (Laughter)

10              THE COURT:  Anything else today?

11              MR. HSING:  No, Your Honor.

12              THE COURT:  No.

13              MR. SHANNON:  Nothing from Apotex, Your Honor.

14              THE COURT:  Okay.  Okay, fine.  I'll speak to the

15  Magistrate Judge and explain what I've entrusted to that

16  Judge's discretion, and then I'll leave it to that Judge.

17  Okay?

18              MULTIPLE SPEAKERS:  Thank you.

19              THE COURT:  Okay.  Thank you, everybody.  Talk to you

20  later.  Bye-bye.

21       (Whereupon, at 2:54 P.M., the hearing was adjourned.)

22

23

24

25

28

1

2

3                                   CERTIFICATE

4

5        I, KAREN HARTMANN, certify that the foregoing is a correct

6   transcript from the electronic sound recording of the

7   proceedings in the above-entitled matter.

8

9

10   /s/  Karen Hartmann    AAERT CET**D0475 Date:  April 12, 2012

11   TRANSCRIPTS PLUS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$16,800,000-** 21:20

**/**

**/S/-** 28:11

**1**

**1-** 26:22
**100-** 6:9
**101-** 14:17,22 15:2,3,20
**102-** 14:17 15:10, 14,18
**103-** 15:12,19
**105810-** 3:6 18:13
**11-** 3:6
**112-** 14:18,24 15:3,21
**116918-** 18:16
**12-** 28:11
**12B6-** 18:3
**12C-** 18:2 19:11, 12
**13-** 21:14 25:9
**1337-** 21:1
**1339-** 16:22,23
**1350-** 13:24
**1351-** 13:25
**1381-** 17:1
**14-** 20:6

**2**

**2000-** 16:22
**2004-** 16:24 21:1
**2006-** 21:14
**2008-** 17:1
**2012-** 3:1 28:11
**2013-** 25:9,12,16
**2014-** 25:17
**227-** 22:1
**231-** 16:21
**25-** 3:23
**25TH-** 24:16
**284-** 17:18 18:23
**285-** 17:4,13 19:3,7 20:20
**28TH-** 25:12,15
**2:08-** 3:1
**2:51:15/RECONVENE - 26:9
**2:52:51-** 26:9
**2:54-** 27:21
**2D-** 22:1

**3**

**3-** 26:25
**30-** 26:3
**30-MONTH-** 25:8,13
**35-** 17:4,18 18:14 19:3,6
**376-** 16:23
**38-** 20:19
**383-** 21:1
**39-** 18:18
**3D-** 16:22,23,25 21:1

**4**

**4-** 6:6,7,8,15,25 9:10,14,19 10:6, 9,22 11:1 13:17 14:3,12 26:18,19, 21,22 27:2,8
**42-** 18:14
**459-** 22:1
**46-** 18:18
**49-** 18:15

**5**

**5-** 27:8
**53-** 18:18
**54-** 21:22
**549-** 16:25
**54D2-** 19:24 20:4
**54D2C-** 20:9
**56-** 18:15
**5TH-** 26:18 27:1, 2,3

**6**

**6/5-** 27:8
**60-** 18:18
**6918-** 3:7

**9**

**9-** 3:1

**A**

**ABLE-** 22:17 26:1
**ACCURATE-** 6:20
**ACCUSED-** 12:15, 17 13:16
**ACTIONS-** 7:18,19
**ACTIVITY-** 18:22
**ADDITIONAL-** 18:25
**ADDRESS-** 11:5 13:11 14:11 21:2 23:10,16
**ADDRESSED-** 5:2

**ADEQUATE-** 19:5
**ADEQUATELY-** 19:2
**ADJOURNED-** 27:21
**ADJUDICATE-** 22:19
**ADJUDICATION-** 23:9,22 26:3
**ADVERSARY-** 17:24
**ADVERSE-** 12:9,14 16:4 20:24 21:2
**ADVICE-** 8:2,4 22:10,12 23:2,16, 20
**ADVICES-** 23:4
**AFTERNOON-** 3:3,4, 10,17,19
**AGAINST-** 6:17 12:9,15
**AGREE-** 19:1
**AHEAD-** 15:17,23
**AIM-** 25:7
**ALBIN-** 3:15
**ALLEGATION-** 10:4, 19,20 18:6
**ALLEGATIONS-** 4:18,20 5:7,9,22 17:5 18:17,25 19:17
**ALLEGE-** 14:5 15:20 18:23 19:4
**ALLEGED-** 7:20 17:21
**ALTERNATIVE-** 3:24 4:23 11:12
**AMEND-** 18:22
**AMONG-** 9:21
**AMOUNT-** 20:2,13 22:21
**AMPLE-** 7:2
**ANDA-** 5:12 6:1 9:2,4,8,11,23 10:1 13:16,22 16:19 17:5,8,12, 15 19:4,16,21 21:4,6,12,13 22:17 23:22 25:16
**ANDAs-** 5:5 25:11
**ANSWER-** 23:23
**ANTIBIOTIC-** 9:9
**ANTICIPATION-** 15:9,14,18
**ANYMORE-** 12:20
**APOTEX-** 3:6 4:12 5:4,18 6:6,8,9, 15,16,20 7:1,3, 24 8:1,2,6 9:2, 15 10:2,23 12:4,

20 14:12 16:23 18:8 25:16 26:24 27:13
**APOTEX'S-** 6:23 10:8 11:12
**APPEALED-** 23:6
**APPEARANCES-** 3:7
**APPENDICES-** 6:12
**APPLICATION-** 13:22
**APPLY-** 9:19
**APPROACH-** 22:23
**APPROPRIATE-** 20:7 22:14,23
**APRIL-** 3:1 25:17 28:11
**AREA-** 17:20
**ARGUE-** 4:5
**ARGUES-** 10:23
**ARGUMENT-** 3:22 4:2,4 11:12,20
**ARGUMENTS-** 6:22 8:11 14:14,15,17
**ARNIE-** 3:14
**ART-** 6:17,20 15:8
**ASSERT-** 17:7 20:23 22:12
**ASSERTED-** 23:17
**ASSERTING-** 5:23
**ASSERTION-** 14:12
**ATTEMPTING-** 17:14
**ATTORNEY-** 19:6 21:11 26:19 27:3
**ATTORNEY'S-** 11:11 13:24 19:3 20:5 21:14,25
**ATTORNEY/CLIENT-** 12:5
**ATTORNEYS-** 26:24
**AUTHORITY-** 17:19, 24
**AWARD-** 17:3,12, 20 20:2,18 21:14
**AWARDING-** 13:24 21:19
**AWARDS-** 21:11
**AWARE-** 5:10 9:25

**B**

**BACK-** 13:9 22:4 24:7 26:7
**BACKGROUND-** 5:3
**BASE-** 13:19
**BASED-** 6:5 17:4 18:25
**BASELESS-** 4:18

6:5,7,15 7:1
10:6,9,20,22,24
11:6,8,9,18 13:2
17:5,7
**BASES-** 5:14,17
6:23,25
**BASIC-** 15:25
**BASIS-** 4:21 5:12,
24 6:1 7:2 10:21
**BEGINNING-** 5:21
**BEHIND-** 10:20
26:25
**BELIEVES-** 6:6 7:3
**BENAMI-** 3:11
**BENCHELL-** 3:19,
20 4:7 26:13,24
**BENJAMIN-** 3:11
8:22 24:2,23
25:10
**BIFURCATE-** 3:24
23:9,11
**BIFURCATED-** 11:13
**BIFURCATING-** 7:9
19:15
**BIFURCATION-**
20:15
**BIG-** 9:12
**BIT-** 20:20
**BMS-** 5:5,23 6:8,
10,14,24 8:9
**BMS'S-** 5:7 6:22
7:4,16
**BOOK-** 9:16
**BOTH-** 5:5,7 6:10
7:22
**BRIEF-** 6:4,14
8:1 16:11
**BRIEFING-** 24:19
**BRISTOL-** 3:5
**BRISTOL-MYERS-**
8:23 11:10
**BROUGHT-** 6:3
18:2 19:11
**BYE-** 27:20

—————— C ——————
**CALL-** 3:2 26:16,
17
**CALLED-** 6:5 14:7
18:1 21:23
**CALLS-** 14:14
**CALMANN-** 3:14,15
4:5,7
**CAN-** 3:7 4:2,9,
10 5:2,19 6:5
8:20 9:22 10:4

11:10 14:2 17:4,
6,12,16 20:10
22:7 23:6 24:24
26:4,6,11
**CAN'T-** 20:24
**CANNOT-** 4:21
5:12,22 6:1 9:4
13:23
**CAPTION-** 3:8
**CAREFULLY-** 20:21
**CASE-** 3:15,
4:15,19,22 5:3,4,
8,11,14,19,21,23
6:4 7:4,10,11,23
8:6,10,12 9:1,2,
3,7,14,17,18,24
10:1,3,4,16 11:2,
7,10,13,14,18,23
12:4,7,11,12,18
13:13,15,16,20,
21 14:5,7,9,20,
21 15:5 16:18
17:3 19:2,6,14,
16,19,21 20:19,
21 21:1,6,9,11,
12,15,25 22:8,17,
24 23:19,21,22
24:10 25:13,21
26:2,4
**CASES-** 9:17,18,
19 11:4,5,7 12:7,
18 14:2 25:18
**CERTAIN-** 9:18
22:9
**CERTAINLY-** 4:4,
15 11:18,22
12:25 13:3
**CERTIFICATE-** 28:4
**CERTIFICATION-**
6:6,7,15 9:10,11,
15,20 10:6,9,24
11:1,6,8,9,19,21
12:1 13:2,17,20,
23 14:3 17:5 19:4
**CERTIFICATION'S-**
10:22
**CERTIFICATIONS-**
7:2
**CERTIFY-** 28:6
**CERTIFYING-** 9:11
**CETERA-** 18:9
**CHARGE-** 9:1,25
11:9,18 12:10
13:1,2
**CHEMICAL-** 25:14
**CHICAGO-** 3:16

26:25
**CHOOSE-** 12:5
**CHRISTINE-** 3:11
24:16
**CIRCUIT-** 4:19
5:11,13,25 9:1
10:21 12:6 16:18
17:10 19:14
21:10 22:2 26:3
**CIRCUMSTANCES-**
13:19
**CITE-** 6:17 15:8
**CITED-** 6:20 10:1
21:9
**CITES-** 12:4
**CLAIM-** 4:15,22
5:12 6:2 9:22
18:4
**CLAIMS-** 3:24
4:24 5:1 7:4,6
19:18
**CLEAR-** 5:11 6:1
10:4 17:2
**CLEARLY-** 5:19
11:9
**CO-COUNSEL-** 3:15
**COLLEAGUE-** 3:15
**COME-** 16:6 22:6
26:7
**COMMERCIAL-** 18:9
**COMPANY-** 13:22
**COMPLAINT-** 10:23,
25 14:5 18:10,16
**COMPLAINTS-** 5:5,
7 18:11,13,20
19:2,10
**COMPLETE-** 24:13
**COMPLETED-** 23:21
**COMPLIMENTED-**
22:2
**COMPOUND-** 10:10,
12,13 14:14
**CONCEIVABLE-** 5:24
**CONCERN-** 20:22
**CONCLUDING-** 7:22
**CONDUCT-** 13:1
17:21 22:18
**CONDUCTING-** 11:15
**CONNOTE-** 17:16
**CONSIST-** 17:6
**CONSOLIDATED-**
3:5 25:18
**CONSTITUTE-** 9:4
**CONTENTIONS-**
6:10 15:7 17:7,8
**CONTEXT-** 15:9

17:15 21:5,12
**CONTINUING-** 17:6
**CORRECT-** 9:5,6
13:14 14:2 24:11,
20 28:6
**CORRESPONDING-**
18:7,17
**COUNSEL-** 3:7,8,9
8:2,4 12:8,14
16:6 17:4,13
20:19,23 22:6,10,
12,19,21,22 23:2,
4,10,17,21 25:6
**COUPLE-** 13:11
**COURSE-** 17:8
18:23 19:12 25:18
**COURTROOM-** 24:25
26:7,15
**COURTS-** 9:22
**CURRENT-** 19:13

—————— D ——————
**DAMAGES-** 17:18,
20 18:10
**DASATINIB-** 5:6
**DATE-** 22:9 24:16,
21 25:1 26:8
28:11
**DAY-** 21:5
**DAYS-** 20:6
**DECEMBER-** 25:12,
15
**DECIDE-** 8:7 16:5
20:10 22:17
**DECIDED-** 19:12
21:6
**DECIDING-** 20:12,
13
**DECISION-** 16:22,
24 17:1 21:5,10,
17,18,23,24 22:1,
25 23:1
**DECISIONS-** 12:23
17:2 22:3 23:6
**DECLINED-** 17:10
**DEFENDANT-** 4:6
17:23 21:3 22:5,
9,25 23:17
**DEFENDANTS-** 4:12
**DEFENDANTS'-** 3:9,
22 20:22
**DEFENSE-** 8:2,8
**DEFENSES-** 8:9
**DEFER-** 23:14
**DELAYED-** 3:22
**DELIBERATE-**

17:11 18:6,17
**DEMAND-** 22:13
**DEMONSTRATE-**
14:20
**DEPUTY-** 24:25
26:7
**DEPUTY'S-** 26:15
**DERIVED-** 12:6
**DESCRIPTION-**
14:25 15:4
**DESIGNATE-** 23:3
**DESIGNATION-**
17:15
**DESPITE-** 7:16
**DETAILS-** 10:18
15:24
**DETERMINATION-**
7:10
**DETERMINE-** 4:25
8:3
**DIDN'T-** 10:23
**DIFFERENCE-** 9:13
**DILEMMA-** 12:5,6,
16,19 16:3 21:3
**DISCLOSE-** 8:5
22:10
**DISCLOSURE-** 22:13
**DISCOVERY-** 11:16
13:1 20:17 22:14,
15 23:3,15,16,18,
20
**DISCRETION-** 27:16
**DISMISS-** 19:9
**DISMISSING-** 18:14
**DISPUTE-** 21:13
**DISREGARD-** 6:22
**DISREGARDED-** 14:2
**DISREGARDS-** 6:24
**DISTRICT-** 9:18,
22 11:4 12:18
21:12,16,23 22:3,
4,17,18 23:6,22
26:2
**DOCKET-** 3:6,23
18:13,16 24:6
**DOCUMENTS-** 22:13
**DOESN'T-** 9:4
10:20 12:19 21:2
**DOSAGE-** 25:17
**DOUBLE-** 13:3
**DRAWN-** 12:14
**DRUG-** 25:14
**DUPLICATE-** 11:15

E
**EACH-** 4:9 6:9,11,

12 18:11,12,20
**EARLIER-** 12:6
**EARLY-** 8:3,5,9
26:10
**ECONOMY-** 7:8
**EFFORT-** 13:2,3
**EFFORTS-** 11:15
**ELECTION-** 20:22
**ELECTRONIC-** 28:7
**ELIMINATED-** 21:1
**ENABLEMENT-** 15:1,
4
**ENGAGES-** 18:8
**ENTERED-** 21:12
**ENTIRE-** 25:8
**ENTITLED-** 11:11
21:17 25:14
**ENTITLEMENT-**
20:1,2 21:24
22:19,22
**ENTITY-** 25:14
**ENTRUSTED-** 27:15
**ENTRY-** 20:6
**ENVISION-** 19:20
21:22
**ESSENTIALLY-** 17:2
**ESTABLISH-** 16:6
**ESTABLISHED-** 20:2
**ET-** 18:9
**EVENTUALLY-** 21:16
**EVERYBODY-** 27:19
**EVERYONE-** 3:3
**EXACTLY-** 16:8,10,
12 21:19 23:18
**EXAMPLE-** 11:6,25
**EXCEPTIONAL-**
3:25 4:15,22 5:8,
14 6:4 7:4,9
10:1,3,4 11:2,10,
13 17:3 19:2,6
20:19 21:15,25
**EXCLUSIVITY-**
25:15
**EXPECT-** 24:12
**EXPEND-** 7:14
**EXPERTS-** 11:25
**EXPIRES-** 25:8,12,
15,17
**EXPLAIN-** 27:15
**EXPLICIT-** 11:5,8
**EXTENT-** 19:8 26:3
**EXTRAORDINARY-**
21:11

F
**FACED-** 12:16

**FACES-** 7:24 8:7
21:3
**FACING-** 12:4
**FAIL-** 12:13
**FAILED-** 12:8
**FAILURE-** 16:4
18:3 20:25
**FAIRLY-** 4:3
**FAITH-** 16:6 20:24
**FAR-** 7:1 26:24
**FASCINATING-** 21:9
**FAVOR-** 19:25
21:13
**FDA-** 9:8
**FED-** 21:10
**FEDERAL-** 4:19
5:11,13,25 9:1
10:21 12:6 16:18
17:10 22:2 26:2
**FEE-** 19:6 21:11
**FEES-** 11:11
13:24 17:4,13
19:3 20:5,10,11,
12,13,19 21:15,
17,19,25 22:20,
21,22 23:10
**FILE-** 9:10
**FILED-** 5:4,5 9:8,
15 11:1 13:22
19:5 20:6 25:16
**FILER-** 13:16
**FILING-** 5:11 6:1
9:4,11 17:5,12
**FILINGS-** 16:19
**FINAL-** 21:12
**FIND-** 25:6
**FINDING-** 13:23
17:3
**FINE-** 3:21 26:14
27:1,14
**FIRM-** 3:9
**FIRST-** 3:8 4:17
5:17,18 6:3,19
8:25 13:13 23:15
25:11,16,20
**FIVE-** 12:11
**FIVE-MINUTE-**
26:17
**FIX-** 24:7
**FLEXIBILITY-** 25:3
**FLEXIBLE-** 25:7
**FOLLOW-** 10:21
15:25 25:22
**FOLLOWING-** 22:12
**FORCED-** 7:25 8:2,
4,8
**FORECLOSE- 9:1**

**FOREGOING-** 28:6
**FOREVER-** 21:6
**FORM-** 24:6
**FORTH-** 5:10,13
8:1 20:7,25
**FOUND-** 18:7
21:21 22:1
**FOUR-** 12:11
**FRAMEWORK-** 19:19
20:19
**FRONT-** 26:11
**FULL-** 24:19
**FURTHER-** 5:8 7:8
19:4

G
**GANNON-** 3:10,11
24:14,16,20 27:5
**GENERALLY-** 25:5
**GERI-** 3:15
**GET-** 15:15,24
17:17 20:12 21:8
24:7 26:2
**GIVEN-** 22:5,9
**GLAD-** 16:1
**GLAXO-** 9:3,17,18
13:13,21 14:2
16:23
**GO-** 4:2 15:17,23
25:2 26:6
**GOING-** 4:3 10:15
17:25 18:5 19:9
26:4,15
**GOOD-** 3:3,4,10,
17,19 16:6 20:24
**GOT-** 16:21,23
**GOVERNING-** 4:19
14:20
**GOVERNS-** 25:20
**GRANT-** 17:25 18:5
**GREATER-** 25:13
**GROUND-** 11:10
**GUIDANCE-** 21:8

H
**HAPPENS-** 20:16
**HATCH-WAXMAN-** 5:4
14:4 17:16,19
19:18
**HEAR-** 4:2
**HEARD-** 16:15,17
23:24
**HEARING-** 22:19
24:11,22 25:4
26:12 27:21
**HEARINGS-** 25:5

**HEFFNER-** 26:18,
21 27:2,4,7
**HELD-** 9:18
**HELLO-** 3:14
**HIGHLY-** 22:2
**HISTORY-** 22:4
**HOUR-** 26:25
**HSING-** 3:11 8:17,
22,25 10:12,14,
16,19 13:7,8,12,
14 14:1,7,11
24:1,2,8,23
25:10,20,25 26:5
27:11
**HUNDRED-** 6:11,12
**HUNDREDS-** 14:16

---
I
---

**IDENTIFY-** 3:16
22:11
**IMPORTANT-** 13:11
**IMPORTATION-** 18:9
**IMPROPERLY-** 17:16
**INAPPLICABLE-**
5:18
**INC-** 5:4 6:8,9
28:12
**INC'S-** 6:6,15,16
7:1 14:12
**INDICATION-** 17:22
**INFERENCE-** 12:9,
14 16:4 20:25
21:2
**INFRINGED-** 9:12
**INFRINGEMENT-**
5:1,16,25 6:10
7:18,22 9:2,5,22,
24 10:5 11:13
12:10,17 13:1,23
14:5,8 19:17
**INFRINGER-** 12:15
17:21
**INFRINGER'S-** 7:20
**INQUIRY-** 17:11
**INSTANCE-** 4:17
6:19 23:15
**INTEND-** 10:8
14:20
**INTENDED-** 22:11
**INTENT-** 22:10
**INVALID-** 6:24
9:12,17 11:21
12:2
**INVALIDITY-** 6:10
7:12,22 14:17
19:18

**INVOLVE-** 7:22
13:15,16
**INVOLVES-** 7:19
**IQBAL-** 19:13
**ISSUE-** 11:5
13:15 14:8 15:5
20:15 22:24
23:16 25:14
**ISSUES-** 4:25 7:9,
13,15,17,20,25
11:16,17,19,22,
24 14:13 15:6
19:21,25 20:10,
17 21:10 22:11
23:1,3,20
**IT'S-** 7:21 10:3,
20 18:1,10 19:8,
12 25:11,13

---
J
---

**JEANNA-** 3:12
**JENSSEN-** 11:7
**JERSEY-** 3:1
**JUDGE-** 21:12,16
22:3,4,17,18,24
23:6,14,22 27:15,
16
**JUDGE'S-** 27:16
**JUDGMENT-** 20:7,
14 21:13
**JUDICIAL-** 7:8
13:3
**JUNE-** 26:10,18
27:1,2,3,8
**JURISPRUDENCE-**
19:14
**JUSTIFY-** 21:4

---
K
---

**KNORR-** 8:12 21:1
**KNORR-BREMSE-**
8:6,15 12:12,18
**KNOWLEDGE-** 7:21

---
L
---

**LAID-** 22:7
**LATER-** 20:6
21:17 27:20
**LATTER-** 17:6
**LAUGHTER-** 27:9
**LEAVE-** 18:24
22:24 27:16
**LEGALLY-** 4:18
**LENGTHY-** 14:16
**LEORA-** 3:11

**LET'S-** 24:10 26:6
**LETTER-** 6:25
14:13
**LETTERS-** 6:8,16
7:2 14:16
**LIABILITY-** 7:11
11:22 20:10,12
**LINE-** 14:2
**LISTED-** 9:16
**LITIGANT-** 17:17
**LITIGATE-** 7:25
**LITIGATION-** 5:15,
22 8:3 9:23 10:7
12:22,24 14:21
17:6,9,12
**LONG-** 3:22 14:16
23:8
**LOOKED-** 21:22
**LUKE-** 3:18 4:12

---
M
---

**MAGISTRATE-**
22:24 23:5,14
27:15
**MAKING-** 21:5
**MANAGE-** 23:15
**MANAGEMENT-**
19:20 22:8
**MANUFACTURE-** 18:9
**MANY-** 11:24
**MAP-** 8:9
**MARCH-** 21:13
**MARK-** 24:5
**MARKETPLACE-**
17:22,23 18:22
**MARKMAN-** 24:11,
12,17,19,22 25:4,
5 26:11
**MATERIALS-** 4:2
8:5
**MATTER-** 28:8
**MEANS-** 10:5 18:14
**MEMORY-** 15:10
**MERE-** 9:4 13:22
**MID-MAY-** 24:12
**MISCONDUCT-** 5:14,
15,20,22 10:7
17:6 23:12,13
**MODIFY-** 20:7
**MONDAY-** 3:1
**MONTHS-** 21:17,18,
19 26:3
**MOOT-** 7:13
**MOREOVER-** 5:13
6:14,22 7:16,24
**MOTION-** 3:23 4:5

10:2 17:25 18:1,
5,22 19:8,11,24
20:5
**MOVE-** 26:4
**MOVED-** 21:14
**MOVING-** 4:1 17:23
**MULTIPLE-** 3:4
6:23 11:16 13:4
27:18
**MYERS-** 3:6

---
N
---

**NARROW-** 13:15
**NEIL-** 3:20 26:13
**NEW-** 3:1 25:14
**NON-INFRINGED-**
9:16
**NON-INFRINGEMENT-**
6:25 7:11
**NON-JURY-** 19:19
**NON-MERITORIOUS-**
17:8
**NORMAL-** 12:23
**NOTED-** 13:18
**NOTICE-** 6:8,16
7:1 14:15
**NOTIFYING-** 17:24
**NOTION-** 4:3 20:12
**NOTWITHSTANDING-**
8:6
**NUMBERS-** 3:6
**NUMEROUS-** 6:20
11:4 12:18 14:15
15:8

---
O
---

**OBJECT-** 20:24
**OBVIOUSLY-** 9:5
**OBVIOUSNESS-**
14:24 15:5,6,8,
12,19
**OFFICE-** 5:15
**OLD-** 9:8
**ONE-** 6:17 11:16
22:9 25:11,17
**OPINING-** 12:1
**OPINION-** 12:8,13
16:4,5 23:2
**OPINIONS-** 20:23,
25 22:6
**OPPORTUNITIES-**
22:5
**OPPORTUNITY-** 4:25
**ORAL-** 3:22
**ORANGE-** 9:16
**ORDER-** 3:2,7

16:6 20:5,15,23
24:5,6
**ORDERLY-** 4:3
23:3,7
**ORDERS-** 22:8
**OTHERWISE-** 8:5
20:5
**OVERLAP-** 11:19,22
**OVERLAPPING-**
7:17 11:17
**OVERRULED-** 12:13

**P**
**PACKAGE-** 26:11
**PAPERS-** 4:1 5:11
**PARTICULAR-**
13:18,19 15:4
17:11 19:10
**PARTICULARLY-**
10:9 15:7
**PARTIES-** 4:14
7:14 11:15
**PARTY-** 7:18
**PATENT-** 5:1,15
9:11 10:10,11
11:20 14:14
17:17,20
**PATENTS-** 5:19
6:18,24 7:12
9:15 11:21 12:2
15:9,23
**PATTERN-** 25:23
**PERHAPS-** 13:4
**PERIOD-** 25:8
**PERTAINING-** 3:24
**PHILLIPS-** 19:14
**PICK-** 25:1
**PICKED-** 26:8
**PLAINTIFF-** 19:1,
23,24 20:3 21:13,
14,17 22:13
**PLAINTIFF'S-** 3:8
4:14,18,21 19:25
**PLAINTIFFS-** 6:3
**PLEA-** 10:25 11:1
**PLEAD-** 10:23,25
**PLEADING-** 11:6,8
19:5 23:13
**PLEADINGS-** 17:22
18:22 19:22 21:7
**PLED-** 14:8
**PM-** 3:1 26:9
27:2,8,21
**POINTS-** 13:11
**PORTION-** 17:16
**PORTIONS-** 19:10

**POSITION-** 6:23
7:17 11:2
**POSITIONS-** 7:1
14:19
**POST-** 20:14
**POTENTIALLY-** 14:4
**PRAYER-** 18:10,19,
23
**PRECEDENT-** 10:21
**PREJUDICE-** 7:24
8:7 12:3,20,21
18:14,21 19:9
**PRESENT-** 8:2,8
**PREVAILS-** 19:23
**PRINCIPAL-** 11:20
**PRIOR-** 6:17,20
15:8
**PRIVILEGE-** 12:5
**PRIVILEGED-** 8:5
**PROBABLY-** 20:1
**PROBLEM-** 17:14
**PROBLEMS-** 25:6
**PROCEDURAL-** 22:4
**PROCEDURE-** 21:21
**PROCEED-** 4:24
7:6 23:7
**PROCEEDINGS-**
23:11 24:11 28:8
**PROCESS-** 22:15,16
**PRODUCE-** 12:8,13
16:4,5
**PRODUCTION-** 22:13
**PRODUCTS-** 9:9
**PROPER-** 14:19
**PROPERLY-** 14:8
19:15
**PROVEN-** 7:12
**PROVIDE-** 7:2
**PROVIDED-** 6:10
**PROVIDES-** 20:4,5
**PTO-** 5:20
**PURPOSES-** 13:24
25:21
**PURSUE-** 7:6
**PUTTING-** 21:5

**Q**
**QUANTIFYING-**
21:19
**QUANTUM-** 12:4,6,
11,16,19 16:3
21:3
**QUESTIONS-** 23:23
**QUICKLY-** 4:3
**QUOTE-** 13:21

**R**
**RACING-** 25:23
**READY-** 22:18
23:21
**REASON-** 4:13,24
7:6,10
**REASONING-** 13:19
**RECEIVING-** 20:10
**RECENT-** 21:10
**RECOGNIZE-** 21:3
**RECORDING-** 28:7
**REFERENCES-** 6:17,
21 15:8
**REFERS-** 19:13
**REGULATIONS-** 9:8
**RELATE-** 5:6
**RELIED-** 9:2
**RELIEF-** 18:8,11,
19,23 19:6
**RELY-** 8:4,8 22:6,
10 23:1
**RENDER-** 13:4
**RENDERED-** 7:13
21:16,18
**REPLY-** 8:21
**REQUEST-** 18:8
**REQUIRE-** 11:16
13:2
**REQUIREMENT-**
10:25
**RESOLVED-** 19:25
**RESOLVING-** 19:21
**RESOURCES-** 4:14
7:14
**RESPECT-** 13:13
14:11,13
**RESPONSE-** 7:17
16:15,17 23:24
**RESPONSIVE-** 6:4,
14 24:17
**RESULT-** 22:16
**REVIEWED-** 4:1
20:21 22:4
**ROAD-** 8:9
**RUBRIC-** 17:10
**RULE-** 16:13 18:2
19:11,24 20:4,9
21:22
**RULED-** 12:19
21:24
**RULES-** 23:10
**RULING-** 19:20
**RULINGS-** 13:4

**S**
**SCHEDULE-** 20:8
21:16 22:18,25
**SCHEDULING-** 22:8,
16 23:15 25:6
26:16
**SEARCHING-** 17:7
**SECOND-** 5:21
25:16
**SEE-** 22:7 25:4
26:11
**SEEK-** 19:2,5
23:20
**SEEKING-** 18:9
**SENT-** 6:8
**SEPARATE-** 9:23
**SEPARATELY-** 20:1
**SEPTEMBER-** 21:23
**SEQUENCE-** 23:10
**SERIES-** 22:3,8
**SERVED-** 7:8
**SERVES-** 15:10
**SERVICES-** 20:11,
13
**SET-** 5:10,13 8:1
20:7 21:16 22:18
24:21
**SEVERAL-** 5:13
6:11,12
**SHALL-** 17:25 25:4
**SHANNON-** 3:17,18
4:7,10,11,12
8:13,15,18,19
13:9,10 14:23,25
15:3,6,12,14,18,
22 16:1,8,10,12
24:4,9 27:13
**SHOW-** 10:8
**SIMPLE-** 7:10,21
**SIMPLY-** 4:13,23
7:21,23
**SINGLE-** 10:1
**SITUATION-** 9:9
13:16 14:3
**SIX-** 21:17,18,19
**SO-CALLED-** 12:6,
19 21:2
**SOMEWHAT-** 3:22
**SOUGHT-** 18:24
**SOUND-** 28:7
**SPEAKERS-** 3:4
27:18
**SPECIFIC-** 9:14
22:11
**SPECIFICALLY-**

16:19
**SPEND-** 4:14
**SPLIT-** 9:21 14:7
**SQUIBB-** 3:6
**STAGE-** 8:3
**STANDARD-** 18:2,3
19:12
**STARTING-** 18:8
**STATE-** 4:9 7:20
10:22 18:3
**STATEMENT-** 9:3
**STATING-** 9:15
**STATUS-** 23:18
**STATUTE-** 17:20
20:4
**STATUTORY-** 17:19
25:15
**STAY-** 3:24 12:25
20:17 25:15
**STRATEGIC-** 12:23
**STRENGTHS-** 5:6
**STRICKEN-** 4:20
9:25
**STRIKE-** 3:23 7:4
18:1,5,7 19:9
**STRIKING-** 18:12,
13,16,19 19:10
23:12
**SUBMISSIONS-**
20:11 24:12
**SUBMITTED-** 13:20
14:4
**SUBPARAGRAPH-**
18:10
**SUBSTANTIVE-**
19:17,21
**SUCCESSFUL-** 17:17
**SUFFICIENT-** 6:17
11:3 12:1
**SUGGESTED-** 6:14
**SUIT-** 5:1 6:18,
24 7:12 12:2 15:9
**SUPERVISE-** 23:3
**SUPERVISED-** 22:15
**SUPP-** 22:1
**SUPPORT-** 10:2
13:23 17:3,12
20:23 21:11
**SUPPOSED-** 26:1
**SUPREME-** 19:13

**T**

**TABLETS-** 5:6
**TACTICAL-** 21:5
23:1

21:9
**TARGET-** 24:25
**TERMS-** 10:3
11:15 12:9,22
**THEORY-** 21:15
26:1
**THEREFORE-** 4:19
5:24 8:8 14:6
**THIRD-** 16:25
19:14
**TIME-** 4:9,14,16
6:3 9:9 12:7
22:17 23:21 26:22
**TODAY-** 25:1 27:10
**TRADEMARK-** 5:15
**TRANSCRIPT-** 28:7
**TRANSCRIPTS-**
28:12
**TRANSLATION-**
15:15
**TREBLE-** 17:17,20
18:9
**TRENTON-** 3:1
**TRIALS-** 11:16
**TRIED-** 11:23
**TRILOGY-** 16:20
**TUESDAY-** 26:18
27:6,8
**TURNS-** 25:1
**TWO-** 5:5,17 6:7
18:11,13,20 19:2
25:11,18
**TWOMBLY-** 19:13
**TYPES-** 12:23
**TYPICAL-** 25:23

**U**

**UNDERWATER-** 12:7,
12
**UNIDENTIFIED-**
26:19 27:3
**UNIQUE-** 13:18
**UNLESS-** 17:21
20:4
**USC-** 17:4,18
19:3,6 20:19
**USING-** 17:14
**UTILITY-** 14:23
15:3

**V**

**VALID-** 12:2
**VALIDITY-** 4:25
11:20
**VALUE-** 20:11,13
**VARIOUS-** 5:6

10:5 18:6 19:18
**VERSUS-** 3:6
**VIEW-** 4:19 19:16
21:4

**W**

**WACKER-** 3:12
**WAIT-** 8:18
**WE'RE-** 9:24
17:15 22:21 26:1,
24,25
**WHEREAS-** 7:18
**WHEREUPON-** 27:21
**WHO'S-** 12:17
24:15
**WHOLE-** 21:6
**WHOLLY-** 5:17
**WILL-** 3:16 4:5
8:2,3,4 11:22,24,
25 12:4,8,14
19:16 20:1 22:24
23:9,14 25:2,7
26:14,16,25
**WILLFUL-** 5:16,25
9:1,5,22,24 10:5
11:13 12:9,17
13:1,23 14:5,8
17:11,14 18:6,17
23:12
**WILLFULNESS-**
3:25 4:15,18,20,
21 5:8,12 6:2,4
7:4,9,13,19,25
**WISHES-** 23:1
**WITNESSES-** 11:24
25:3,4,5
**WORDS-** 7:20
**WORK-** 25:2 26:4
**WRITTEN-** 14:25
15:4
**WYETH-** 11:7

**Y**

**YAMANOUCHI-** 16:21
**YEARS-** 12:11